UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; JAMES WARD; MARSHALL HUNT, and RICHARD GARDEN

                Plaintiffs,

v.

KELSEY-HAYES COMPANY; TRW AUTOMOTIVE HOLDINGS CORP.; and NORTHROP GRUMMAN SYSTEMS CORP.

                Defendants.

Case No. 11-14434
Honorable Julian Abele Cook, Jr.

ORDER

This litigation involves a challenge by the Plaintiffs, the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("Union"), et al, to the Defendants' modifications to their health insurance coverage.[1]

In their lawsuit, the Plaintiffs have complained that these Defendants have, *inter alia*, breached the fundamental terms of the parties' collective bargaining agreement, and in doing so, violated its responsibilities under an existing ERISA benefit plan. On January 5, 2012, this Court granted a joint motion by the Defendants to compel arbitration. (ECF 41). Believing that the Defendants' joint motion had been decided incorrectly, the Plaintiffs have now proffered a motion

---

[1]The Union was the collective bargaining organization for the identified individual Plaintiffs and other persons, who worked at the Kelsey Hayes Company's manufacturing plant in the Detroit, Michigan area during all of the times that are pertinent relevant to this lawsuit.

for reconsideration. (ECF 42). A third Defendant, Northrop Grumman Systems Corp. ("Northrop Grumman"), has also filed a motion to compel arbitration. (ECF 44).

I.

In its evaluation of a motion to reconsider, this Court - acting pursuant to E.D. Mich. LR 7.1(h)(3) - must seek to determine if the movants have established (1) a "palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been mislead;" and (2) that a correction of the alleged defect would alter the disposition of the case. E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is defined as a defect which is obvious, clear, unmistakable, manifest, or plain." *Mich. Dep't of Treasury v. Michalec*, 181 F.Supp.2d 731, 734 (E.D. Mich.2002) (internal citation omitted).

However, our Local Rules dictate that a motion for reconsideration should not be granted if it "merely [presents] the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). The Sixth Circuit has held that the "palpable defect" standard for reconsideration is consistent with the standard for amending or altering a judgment under Federal Rule of Civil Procedure 59(e). *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir.2006).

II.

In support of their position, the Plaintiffs contend that the Order of January 5, 2012 contains several palpable defects which should be corrected by the Court. The Court will now address these arguments seriatim.

A.

Initially, the Plaintiffs submit that this challenged directive is wrongfully based on a now-

2

vacated decision, *Burcicki v. Newcor, Inc.,* 2010 U.S. Dist. LEXIS 27353 (E.D. Mich. Mar. 23, 2010) (Rosen, G.). However, the Plaintiffs appear to have overstated the application of *Burcicki*, and in so doing, they have misstated the effect of a subsequent decision by the Sixth Circuit. The individual retirees in *Burcicki* and in the case at bar asserted claims under two statutes (to wit, Labor Management Relations Act, 29 U.S.C. § 141 et seq. and Employee Retirement Income Security Act, 29 U.S.C. §1002 et seq.) that were based on termination agreements which contained a broad arbitration clause. In evaluating the merit of the Defendants' motion to compel arbitration, this Court found its analysis in *Burcicki* case to be informative, but not controlling. The *Burcicki* case was subsequently appealed, and, upon settlement of the issues in dispute, the appeal was dismissed for mootness, and the earlier judgments at the district court level were vacated. The Sixth Circuit did not voice a definitive opinion on the soundness of the legal analysis in the earlier opinion. In civil cases, the established practice of federal appellate courts is to vacate the underlying decision when a contested issue becomes moot through no fault of the appellant. *See United States v. Munsingware, Inc.,* 340 U.S. 36, 39 (1950). Inasmuch as this Court did not rely upon the opinion in *Burcicki* in reaching its independent evaluation of the Defendants' motion to compel, the subsequent vacatur which followed the settlement is of no consequence.

B.

Next, the Plaintiffs submit that the presumption of arbitrability does not apply to retirees. In advancing this position, they contend that retirees have an independent right to sue their former employer regardless of any right or obligation that their former union may have had to arbitrate. The Order, which is now being challenged, determined that retirees can be required to arbitrate certain claims, if required to do so by contract. Both parties have cited *Cleveland Electric Illuminating Co.*

3

*v. Utility Workers of America*, 440 F.3d 809 (6th Cir.2006) - a decision on which the Court partially relied in rendering its now-challenged Order. In *Cleveland Electric*, the Sixth Circuit held that "the presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes the dispute from arbitration." *Id*. at 816. The Court once again finds this precedent to be controlling. Hence, the presumption of arbitrability can apply to retirees.

C.

Third, the Plaintiffs contend that the 2001 Plant Closing Agreement applies only to the Union - not to the individual retirees. To that end, they suggest that, if the Court continues to find the 2001 Plant Closing Agreement requires arbitration, this obligation should only apply to the Union. In support of this position, the Plaintiff-Union submits that it will withdraw as a party to this litigation if the Court continues to find that the Union is obligated to arbitrate in order to allow the retirees to pursue their claims in federal court.

However, the Court notes that the retirees are third party beneficiaries to the 2001 Plant Closing Agreement. The retirees seek to enforce their right to healthcare under the provisions as found in the 2001 Plant Closing Agreement. A "third party beneficiary's rights are derivative" because "the foundation of any right the third party may have . . . is the contract between the promisor and the promisee." 13 Richard A. Lord, *Willison on Contracts* § 37:23 (4th ed.1990); *see also Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 370-71 (1984) (rights of third party beneficiary are subject to all defenses that arise from contract between promisor and promisee, unless contracting parties specify otherwise). As a third party beneficiary, a claimant's right to enforce a contract cannot "rise higher than the rights of the contracting party through whom he

4

claims," 13 *Willison on Contracts* § 37:23. Therefore, to the extent that the retirees are seeking to enforce promises made in the 2001 Plant Closing Agreement, they are bound by its terms. Even if the Union does withdraw as a party to this litigation, the retirees (as third party beneficiaries of the 2001 Plant Closing Agreement), would still be required to arbitrate to the extent that they are required by the contract and by law.

D.

Fourth, the Plaintiffs proclaim that (1) the 1998 Collective Bargaining Agreement ("CBA") precludes compelled arbitration, and (2) this preclusion survived the 2001 Plant Closing Agreement. In making this argument, the Plaintiffs assert that the Court did not give full effect to the terms of the CBA regarding retiree healthcare, which the Union submits should govern as a matter of law and as a matter of contract.

The Plaintiffs maintain that the retirees are entitled to enforce their collectively-bargained rights to retirement healthcare as a matter of law, citing to (1) 29 U.S.C. § 1132(a)(1)(b) of ERISA and (2) § 301(a) of LMRA, 29 U.S.C. § 185. In making this argument, they rely upon a decision by the Sixth Circuit in *UAW v. Yard-Man, Inc.,* 716 F.2d 1476 (6th Cir.1983) for the proposition that retirees are entitled to enforce their rights to retirement healthcare in court. The *Yard-Man* court found that "each retiree has an undisputable and effective remedy against the employer for breach of contract under § 301(a)." *Id.* at 1485. While at first brush this precedent may appear to be controlling, the dispute in *Yard-Man* concerned the propriety of retirees directly settling their claims with their former employer. *Yard-Man* did not address the question of whether mandatory arbitration provisions are enforceable in the context of retiree healthcare claims. Undoubtedly, retirees have a remedy under LMRA and ERISA. However, the question presented before this Court is the extent

5

to which this remedy can be superceded by a contractual provision which requires arbitration.

On this issue, the Court declines to find that its previous Order contains a palpable defect. As noted in the previous order "[t]he Court cannot look to the [2001]Plant Closing Agreement for a selective clause that would guarantee health benefits while ignoring another clause therein which mandates arbitration."

The 2001 Plant Closing Agreement expressly terminated the 1998 collective bargaining agreement except for "any obligation of the Company or TRW with respect to any pension plan or payments to retirees for retiree health care, life insurance, or short or long term disability benefits, [which] shall be governed by applicable law and benefit plans (including those provision contained in [the Collective Bargaining Agreements]) and are not released by this Agreement" (Pls.' Mot. Summ. J., Ex. B, ¶ 5, ECF No. 7-3). The language within the 2001 Plant Closing Agreement also states:

> [i]n the event the Union shall have any dispute or disagreement concerning the interpretation and application of this Agreement, the sole and exclusive recourse of the Union is to submit any dispute or disagreement in writing to the Company within thirty (30) days after the Union shall reasonably have become aware of the existence of any such dispute or disagreement. Within ten (10) days of receipt of the written document, the Company and the Union shall meet to attempt to resolve the matter. Should the meeting fail to resolve the matter, arbitration shall be conducted in accordance with the labor arbitration rules of the American Arbitration Association. The cost of the arbitrator's fee shall be borne equally by each side. The arbitrator cannot add to, subtract from, or modify the terms of this Agreement. The decision of the arbitrator shall be final and binding and enforceable in any court of competent jurisdiction or appealable in accordance with the applicable standards of federal law. (*Id.*, ¶ 20).

As noted in the Order, which is currently being challenged by the Plaintiffs, when there is an arbitration clause of broad applicability, "only an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from

arbitration can prevail" *Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 905 (6th Cir.2010) (internal quotation and citation omitted). There is no exclusion of health care benefits from this broad arbitration clause.

E.

Next, the Plaintiffs submit that the Plant Closing Agreement cannot alter the rights of those retirees who had already retired, and whose rights had already vested, prior to the execution of this document. They are correct by pointing out that the contested Order of January 5, 2012 mandates reconsideration. The above-cited 2001 Plant Closing Agreement was signed on April 17, 2001. Some of the Plaintiffs, having chosen retirement prior to the signing of this Plant Closing Agreement, are not bound by it. *See Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 181, n.20 (1971) ("[u]nder established contract principles, vested retirement rights may not be altered without the pensioner's consent"); *Prater v. Ohio Education Association*, 505 F.3d 437, 444 (6th Cir.2007) (subsequent agreement between union and employer does not permit employer to amend or terminate retiree benefits that have already vested). Therefore, the now-challenged Order must be modified. Hence, those Plaintiffs who retired prior to April 17, 2001 cannot be required to arbitrate their claims because their benefits and interests are governed by the 1998 CBA.[2]

III.

Finally, the Court turns to the motion in which the Defendant, Northrop Grumman, seeks

---

[2]The Plaintiffs request that the Court clarify that its Order is neither final nor appealable. However, the Court notes that such an order which denies a petition to compel arbitration is final and appealable. 9 U.S.C. § 16(a)(1). Therefore, inasmuch as this Order in part denies the motion to compel, it is immediately appealable.

to compel arbitration. Inasmuch as this petition for relief is substantially similar to the motions to compel arbitration that have been previously filed by the other Defendants, the Court finds that those Plaintiffs who retired prior to April 17, 2001 cannot be compelled to arbitrate. However, with respect to those Plaintiffs who retired on or after April 17, 2001, the motion to compel arbitration is granted.

IV.

Therefore, the motion for reconsideration is granted in part and denied in part (ECF 42). The motion to compel arbitration is granted in part and denied in part (ECF 44).

IT IS SO ORDERED.

Date: June 13, 2012                                             s/Julian Abele Cook, Jr.
                                                                JULIAN ABELE COOK, JR.
                                                                U.S. District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on June 13, 2012.

                                                                s/ Kay Doaks
                                                                Case Manager